IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re DARRELL CLAY WARD & CYNTHIA JANE WARD,<br><br>Debtor. | Chapter 7<br><br>Case No. 07-4183-SSC<br><br>(Not for Publication- Electronic Docketing ONLY)<br><br>MEMORANDUM DECISION |

I. PRELIMINARY STATEMENT

The Trustee, Constantino Flores, filed an objection to the Debtors' exemptions, as set forth on Amended Schedule C, for "prepaid utilities," in the aggregate amount of $3,333.50. The Debtors relied on A.R.S. §33-1124 in support of their exemption claim. The Debtors filed a response in support of their position, and the Court conducted a hearing on the matter on December 16, 2009. At the conclusion of the hearing, the parties stated that the matter was submitted for a decision from the Court. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§1334(a) and 157(b)(2)(B) (West 2009). The Court has set forth below, to the extent necessary, its findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.[1]

---

**1.** The Debtors filed their Chapter 7 proceeding on August 23, 2007 ; therefore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 "BAPCPA"is applicable to this contested matter. (Pub.L.No. 109-8, §1501(b)(1), 119 Stat. 23, 216).

1

## II. ISSUE PRESENTED

The sole issue for determination is whether the Debtors' prepetition deposit of funds for future utility payments is within the parameters of ARS 33-1124, Arizona's food and fuel exemption law.

## III. DISCUSSION

The salient facts are not in dispute. Just prior to the filing their Chapter 7 bankruptcy petition, the Debtors paid Qwest the amount of $1,000; Arizona Public Service, the amount of $1,400; the City of Phoenix, the amount of $750; and Southwest Gas Company, the amount of $183.50. The aggregate amount of the payments was $3,333.50.[2] The Debtors assert, and the Trustee does not dispute, that each of the aforesaid companies provided prepetition and postpetition utility services to the Debtors at their residence.[3] The Trustee also agrees that the Debtors made the payments as deposits to the utilities, for payment of future, or post-petition, services to be rendered by the utilities.[4] The Debtors essentially estimated what they should pay to the utilities over the next six months, based upon prior usage, and deposited those funds with the utilities shortly before they filed their Chapter 7 petition. In fact, the Debtors fully utilized their deposits in payment of subsequent utility services. The Trustee did not challenge the good faith of the Debtors. Rather, the Trustee believed that the Debtors were not entitled to such an

---

**2.** The Debtors actually filed the amendments to their Schedule B and C on September 12, 2008 (Docket Entry No. 40). It is unclear why the Debtors delayed in making the amendments to their Schedules, but the Trustee does not challenge the Debtors ability to amend.

**3.** For instance, Qwest provided telephone/internet services; Arizona Public Service, electricity; the City of Phoenix, water and sewer services and garbage pick-up; and Southwest Gas, natural gas.

**4.** For purposes of this decision, the parties agree that none of the payments to any of the utilities was in reduction of prepetition services or product provided by the utilities.

2

exemption as a matter of law.[5]

Because Arizona is an opt-out state, the Debtors must rely on the exemptions provided by the State of Arizona.[6] In order to claim the deposits to the utilities as exempt, the Debtors rely on A.R.S. §33-1124 (West 2009), which provides as follows: "All food, fuel and provisions actually provided for the debtor's individual or family use for six months are exempt from process."

The parties agree that the exemption statutes in Arizona are to be liberally construed in favor of the claim of exemption by a debtor. In re Allman, 286 B.R. 402, 407 (Bankr.D.Ariz. 2002). The purpose of the exemption statutes is to protect the debtor and the family so that they do not become destitute. In re Elia, 198 B.R. 588 (Bankr.D.Ariz. 1996).

The Trustee relies on the recent case of In re Gietl, 2009 WL 3872153 (Bankr.D.Ariz. 2009) as dispositive of the issues presented, and requests that said decision be followed by this Court. In the Gietl decision, the debtors filed their Chapter 7 petition on April 7, 2009. On their Schedule C, as to exemptions, they claimed a Fry's gift certificate or "gift cards" with a "face value of $7,000."[7] The debtors utilized Section 33-1124 as the predicate for their claim of exemption. The trustee objected on the grounds that the gift certificate or gift cards could be utilized for non-food and non-fuel items, such as the purchase of electronics.[8]

---

**5.** At oral argument, counsel for the Trustee stated that he also represented debtors from time to time. He argued that he had no problem urging such debtors to store six months of food at their residence prior to the filing of the bankruptcy petition. He believed that the physical storage of food or fuel was all that was contemplated by the Arizona exemption, even if the reality of today's society was that debtors did not place six months of propane or wood on their properties.

**6.** 11 U.S.C. § 522(b)(2)(West 2009); A.R.S. §33-1133(B)(West 2009).

**7.** 2009 WL 3872153 at *1 (Bankr.D.Ariz. 2009). Fry's provides food and other grocery and non-food items at numerous locations in Arizona.

**8.** Id.. In particular, the trustee argued that the debtors could purchase a flat-screen television with the gift certificate or gift cards. The gift cards were also freely transferable, so the trustee could conceivably sell same for cash for the benefit of creditors. Id. at *2, note 1.

3

Section 33-1124 states that any food or fuel to be claimed as exempt must be "actually provided" for the debtor's individual or family use. The Court agreed with the trustee's interpretation that the exemption did not apply to the gift certificate or gift cards, but stated that the Arizona exemption did not provide that the food or fuel must be "in kind" to be exempt.[9] The Court reasoned that to allow for the exemption of the gift certificate or gift cards would require a similar breadth to be given to the interpretation of other Arizona exemptions, such as the household furniture and appliance exemption contained in A.R.S. §33-1123.[10] Thus, the Court

---

**9.** Id. at *1-2.

**10.** A.R.S. §33-1123 (West 2009) provides as follows:

"The following household furniture, furnishings and appliances personally used by the debtor are exempt from process provided their aggregate fair market value does not exceed four thousand dollars:

1. One kitchen and one dining room table with four chairs each, plus one additional chair for each dependent of the debtor who resides in the household if the debtor and dependents exceed four in number.
2. One living room couch.
3. One living room chair, plus one additional chair for each dependent of the debtor who resides in the household.
4. Three living room coffee or end tables.
5. Three living room lamps.
6. One living room carpet or rug.
7. Two beds, plus one additional bed for each dependent of the debtor who resides in the household.
8. One bed-table, dresser and lamp for each bed allowed by paragraph 7.
9. Bedding for each bed allowed by this section.
10. Pictures, oil paintings and drawings, drawn or painted by debtor and family portraits in their necessary frames.
11. One television set or radio or stereo.
12. One radio alarm clock.
13. One stove.
14. One refrigerator.
15. One washing machine.
16. One clothes dryer.
17. One vacuum cleaner."

4

Case 2:07-bk-04183-SSC   Doc 49   Filed 02/09/10   Entered 02/09/10 13:20:33   Desc
Main Document    Page 4 of 8

stated that the debtors could improperly claim a future purchase of a refrigerator or a couch as exempt, if the Court followed the broad interpretation advocated by the debtors. The Court did not address how a debtor might fulfill the requirement of having "actually provided for" food and fuel to the debtor or the debtor's family for a six-month period.

It appears that the Debtors have taken the <u>Gietl</u> argument to the next logical level. At oral argument, the Debtors' counsel stated that it would potentially violate local, state, and/or federal law to have six months' worth of potentially volatile fuel stored at the Debtors' premises. Since the Debtors' storage of fuel on their property was potentially illegal and definitely unwise, they placed deposits with their utilities. There is some logic to the Debtors' argument. The Arizona legislature has not removed the word "fuel" from the food and fuel exemption law. It also may not be gainsaid that the statute should be interpreted in a manner that does not require illegal activity by a debtor.

The Court should apply the ordinary, everyday meaning to the word "fuel," since it is not defined in the statute or in Arizona case law. *Webster's New World College Dictionary* 571 (4th ed. 2005), defines "fuel," in pertinent part, as follows:

> [A]ny material, as coal, oil, gas, wood, etc., burned to supply heat or power. . . . .
> .[F]issile material from which nuclear energy can be obtained, as in a nuclear reactor. . . . ..

Clearly the definition incorporates more than just wood for a stove or propane or oil for a tank or a lamp. If heat is provided by natural gas or electricity, that should be within the parameters of the definition. So, how is it, in this modern society, that a debtor may "actually provide" for six months' worth of fuel? Placing a deposit with a "fuel" company that may only be utilized to heat a debtor's residence or allow the debtor to cook food for the family should be consistent with the intent of the food and fuel exemption. However, the collection of garbage or providing water or sewer services, although necessary, are not within the definition of fuel. Therefore, in reviewing the deposits with the utilities, the Court concludes that providing natural gas or

electricity are within the parameters of the definition. However, the deposits with the telephone/internet provider or the City are not within the definition of fuel. The Court will allow the deposits to Arizona Public Service for the obtainment of electricity and Southwest Gas for providing natural gas as being within the Arizona fuel exemption. However, the deposits to Qwest and the City of Phoenix are disallowed.

The Court recognizes, although not specifically addressed by the parties, that there may be other provisions of the Bankruptcy Code which require a deposit from a debtor. For instance, Section 366 requires that a debtor place certain funds on deposit to obtain postpetition services from a utility.[11] If the deposit is not placed with the utility within a short

---

**11.** 11 U.S.C. §366 (West 2009) provides as follows:

**"(a)** Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

**(b)** Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

**(c)(1)(A)** For purposes of this subsection, the term "assurance of payment" means–
　　**(i)** a cash deposit;
　　**(ii)** a letter of credit;
　　**(iii)** a certificate of deposit;
　　**(iv)** a surety bond;
　　**(v)** a prepayment of utility consumption; or
　　**(vi)** another form of security that is mutually agreed on between the utility and the debtor or the trustee.

　　**(B)** For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

**(2)** Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility

6

period of time, the utility may refuse or discontinue service to the debtor. The nature of the services provided by a utility are critical to an individual debtor or a debtor that is an entity. This separate requirement under the Bankruptcy Code ensures that a utility is paid on a current basis and receives adequate assurance that the debtor will pay for future services. The debtor may utilize bankruptcy estate property to ensure that he, she or it has the funds available to make the requisite utility deposits. Thus, a trustee would normally not seek a turnover of a utility deposit to be distributed to creditors of a bankruptcy estate.

It appears that the Trustee in this case is concerned about the six-month deposits placed with Qwest and the City of Phoenix. Therefore, although the Court agrees with the Trustee that such funds are not within the Arizona food and fuel exemption, a certain portion of the deposits would normally be provided by the Debtors postpettion to continue to receive services from Qwest or the City of Phoenix. The Trustee should determine what portion of those deposits may be retained and utilized by the Debtors for the separate requirements of Section 366. The Court will not order a turnover of the funds placed on deposit with Qwest and the City of Phoenix at this time.

---

does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

**(3)(A)** On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

**(B)** In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--

    **(i)** the absence of security before the date of the filing of the petition;
    **(ii)** the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
    **(iii)** the availability of an administrative expense priority.

**(4)** Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court."

7

## IV. CONCLUSION

Based upon the facts of this case, the Court sustains the Objection of the Trustee to the Debtors' claim of exemption in the deposit of $1,000 placed with Qwest and the deposit of $750 placed with the City of Phoenix. Those deposits are not within the Arizona food and fuel exemption, Section 33-1124. The Court overrules the Objection of the Trustee to the Debtors' claim of exemption in the deposit of $1,400 placed with Arizona Public Service and the deposit of $183.50 placed with Southwest Gas Company. The Debtors shall lodge an appropriate form of order.

DATED this 9TH day of February, 2010.

*[signature]*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge